**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**                          **CASE NO.: 2:06CR160**

**GREGORY EDWARD VERNON**                                **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the court on the motions **[17, 20]** of Defendant Gregory Vernon to suppress certain evidence and dismiss the indictment.

On August 9, 2006, United States Marshals arrested Gregory Vernon inside Sam's Town Casino in Tunica, Mississippi pursuant to an outstanding warrant from the State of Arizona. At that time, there were no pending charges against Vernon in this court or the State of Mississippi. The marshals discovered that Vernon's car was located in the casino's private parking lot. Without obtaining a search warrant, marshals searched the car and seized a computer along with $27,279.00 in cash from inside the vehicle. Marshal Christopher Kruse then contacted the City of Chandler, Arizona Police Department to determine whether the computer was needed in its investigation. The Arizona police advised that they did not need the computer but indicated that, because child pornography had previously been found on Vernon's computers in Arizona, there was a possibility they might find child pornography on the seized computer. Marshal Kruse then asked Vernon for his consent to search the computer. Vernon refused. Kruse then obtained a search warrant and searched the computer. Images of child pornography were found.

On October 26, 2006, Vernon was indicted by a grand jury in the Northern District of Mississippi for knowingly transporting child pornography into interstate commerce, in violation of

§§ 2252A(a)(1) and 2256(8)(A) and (B); and knowingly possessing a computer containing images of child pornography that had been transported in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A) and (B). Prior to the indictment, Vernon was transported to Arizona and subsequently sentenced to 13 years imprisonment by an Arizona state court. On May 23, 2011, the Federal Government filed a detainer regarding the 2006 indictment. On June 24, 2011, Vernon was served with an arrest warrant for his 2006 federal indictment.

Vernon seeks to suppress the 2006 search and seizure of his car and computer, asserting that both searches violated the Fourth Amendment to the United States Constitution. He further seeks to dismiss the case on the basis that he was denied his Sixth Amendment constitutional right to a speedy trial. We will address the speedy trial issue first.

Vernon argues that the Government did not file a detainer until May 23, 2011, thus denying him the opportunity to exercise his right to a speedy trial in 2006. He asserts that he never received a copy of the detainer which the Government alleges it filed in 2006. Vernon also asserts that he was indicted on October 26, 2006, but was never served with a copy of the indictment. He argues that despite the fact that the arrest warrant was issued on October 30, 2006, it was not served until June 24, 2011. Vernon argues that the Court need not decide whether dismissal is warranted under the Speedy Trial Act or the Interstate Agreement on Detainers Act ("IADA") because dismissal is required due to violation of his Sixth Amendment right to a speedy trial.

The Government contends that on November 8, 2006, it filed a detainer with the Arizona state authorities holding Vernon. Although it does not have a copy of the actual detainer, the Government submits that the marshals' electronic database has a record showing that the detainer was verified on August 30, 2007, and again on February 11, 2010. The Government argues that

2

Vernon's speedy trial rights have not been violated and that he has been aware of the federal prosecution for years, as evidenced by his effort to recover the money seized from his vehicle in 2006.

The right to a speedy trial attaches when a person is arrested, indicted, or otherwise charged. *Doggett v. United States*, 505 U.S. 647, 655 (1992). A state seeking to bring charges against a prisoner in another state's custody must first file a detainer. *New York v. Hill*, 528 U.S. 110, 112 (2000). A detainer is a request filed by a state's criminal justice agency with the institution in which the prisoner is incarcerated, asking the institution to either hold the prisoner for the agency or notify the agency when release is imminent. *Id*. The Interstate Agreement on Detainers Act is a contract entered into between the States (excluding Louisiana and Mississippi), the District of Columbia, and the U.S. Government to encourage the "expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C.A. app. § 2. The IADA provides that officials having custody of the prisoner "shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." *Id.* Likewise, the Speedy Trial Act provides:

> (1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly--
>
> (A) undertake to obtain the presence of the prisoner for trial; or
>
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

18 U.S.C.A. § 3161(j)(i) (West 2008). Upon the prisoner's demand, the charging state is required to make a 'diligent, good-faith effort' to secure the prisoner for a prompt trial on the pending charges. *Smith v. Hooey*, 393 U.S. 374, 383 (1969).

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. When a defendant's right to a speedy trial has been violated, dismissal is "the only possible remedy." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). The purpose of this right is to prevent undue and oppressive incarceration prior to trial, lessen the anxiety accompanying public accusations, and limit the possibility that a long delay will impact the accused's ability to defend his case. *Id.* In determining whether there has been a speedy trial violation, courts balance the four *Barker* factors: (1) length of the delay, (2) reason for the delay, (3) whether the defendant has asserted his Sixth Amendment right to speedy trial, and (4) prejudice suffered by the defendant resulting from the delay. *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). The first three factors are weighed against any prejudice the defendant suffered as a result of the delay. *Id.* The defendant usually bears the burden of proving prejudice. *Id.* However, a defendant may be relieved from proving prejudice if the first three factors weigh so heavily in the defendant's favor that prejudice is presumed. *Id*. at 231. The Fifth Circuit has only presumed prejudice in cases where the post-indictment delay is at least five years. *Id*. at 232.

Failing to notify a prisoner of the detainer lodged against him is a violation of the Interstate Agreement on Detainers Act as well as the Speedy Trial Act. However, the Fifth Circuit has found that there is no sanction under the Speedy Trial Act for failure to lodge a detainer against a defendant or advise him of his right to demand a speedy trial. *United States v. Anderton,* 752 F.2d 1005, 1008 (5th Cir. 1985). The Fifth Circuit has also found that dismissal of the indictment is not an available

4

remedy for violation of the notice provision in the IADA. *Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998). This Court notes that although most states have become parties to the IADA, Mississippi has not. *Gardner v. State*, 57 So.3d 688, 689 (Miss. Ct. App. 2011). This has no bearing on the present matter as Vernon was incarcerated in Arizona, and not Mississippi, at the time the Government indicted him. However, in light of the fact that the IADA works to secure the speedy trial of prisoners already incarcerated in other jurisdictions, the Court encourages the Mississippi legislature to consider adopting the IADA so that Mississippi may become a party state.

Since dismissal is not appropriate under the Speedy Trial Act or the IADA, we now turn to the issue of whether the defendant's constitutional right to a speedy trial was violated.

The speedy trial analysis is triggered herein because Vernon's post-indictment delay was nearly five years. The trial was originally set for August 15, 2011, but was continued until a later date due to Vernon's appointed counsel having another trial on the same day. As to the reason for the delay, the Government offers that it has done everything possible to secure Vernon's presence in a timely manner. It contends that Vernon was in police custody from the time he was transported to Arizona until he was sentenced in Spring 2010 by the Arizona state court. It appears from the briefs that the defendant was held in custody from 2006 until his plea in 2010. During this interim, he was not tried on state or federal charges. The Government offers no explanation for the delay between the time Vernon was sentenced and the time the detainer was filed, nor does it explain the delay between the time the arrest warrant was issued and the time it was served on the defendant. Therefore, the Government appears to be solely responsible for the near five-year delay.

Vernon now asserts his right to a speedy trial and argues that he was unable to do so in 2006 because the Government did not file the detainer until May 23, 2011. The only evidence presented

by the Government showing that a detainer was filed in 2006 is a copy of a computer screen from the U.S. Marshals' electronic database and the testimony of Carol Arnold, a Marshals Service employee responsible for handling detainers. Arnold testified that a copy is normally made of a detainer once it is filed. She testified that an actual, faxed, or computer printout copy of the filed detainer is kept by the Marshals Service. Even if we assume that the detainer was filed in 2006, the question remains as to whether the Arizona officials notified Vernon of the detainer in 2006. Vernon claims that he never received the 2006 detainer, and there is no proof that he did. However, there is proof that the Government filed a detainer in 2006. Aside from the fact that it would be inappropriate to hold the Government accountable for the Arizona officials' failure to notify Vernon, there is also no sanction under the Speedy Trial Act or the IADA for failure to provide notice of the detainer.

As to the prejudice suffered by the defendant, Vernon argues that it will be virtually impossible to recreate his day-to-day activities five years after the indictment. He asserts that the delay has substantially impaired his defense because the central issue in the case will be when the child pornography was downloaded onto the computer. Contrary to Vernon's argument, the Fifth Circuit has stated that "faded memory cannot prejudice the defense to the extent necessary to violate the Sixth Amendment unless it substantially relates to a material fact in issue." *United States v. Hendricks*, 661 F.2d 38, 42 (5th Cir. 1981). Vernon is charged with knowingly possessing and transporting a computer containing images of child pornography into interstate commerce. The central issue is not when Vernon downloaded the images onto the computer, but instead whether he knowingly possessed the computer and transported it into interstate commerce. As such, it does not appear that Vernon's failed memory will prejudice his defense to the extent necessary to violate the

Sixth Amendment.

As Vernon is unable to establish actual prejudice, we now evaluate whether prejudice should be presumed. Under Fifth Circuit precedent, prejudice is only presumed when the post accusation delay is at least five years. Although considerably close, Vernon's delay falls short of this benchmark. Based on the above analysis and in light of the fact that Vernon is not entitled to a presumption of prejudice, we conclude that the defendant's constitutional right to a speedy trial has not been violated. The motion to dismiss **[20]** is denied.

We now turn to the issue of whether the 2006 search and seizure of the defendant's car and computer should be suppressed.

As to the Fourth Amendment violation, Vernon first argues that the marshals lacked probable cause to search and seize his car without a warrant. He asserts that there was no reason to search his car because he was arrested inside the casino, rather than in or near his car.

The Government contends that the casino requested the arresting marshals to remove Vernon's car from its property and that they did so. The Government argues that the car was searched pursuant to a valid inventory policy, and thus falls within an exception to the warrant requirement.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Warrantless searches violate the Fourth Amendment unless they fall within an exception to

the warrant requirement. *United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984)). The Government bears the burden of proving whether there is an exception to the warrant requirement. *Williams v. United States*, 382 F.2d 48, 50 (5th Cir. 1967). An inventory of seized property is an exception to the warrant requirement when officers conduct the inventory in a routine, administrative manner. *United States v. Bullock*, 71 F.3d 171, 177 (5th Cir. 1995). The inventory must not be a "ruse for general rummaging in order to discover incriminating evidence." *Id.* (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

The U.S. Marshal Services Policy Directives on inventory and impoundment provide as follows: "The rationale for the impounding of the vehicle must no [sic] be based upon a search for incriminating evidence." (Pol. Directives Impoundment Inventory A.)

Vernon's car was parked in the casino's private parking lot. The car was not obstructing traffic nor did it appear to be involved in any type of criminal activity. In its motion, the Government states that the casino requested that the vehicle be removed from its property. However, at the motion hearing, Marshal Kruse admitted that he first asked the casino if they wanted Vernon's car removed. He also admitted that the purpose of the search was to further the marshals' investigation and that the search did not comply with their inventory policy. Although the search did not comply with the marshals' policy, this does not mean that it violated the law. As Vernon was arrested away from his home, it was reasonable for the marshals to remove his vehicle from the casino's parking lot. Despite Kruse's admission that the vehicle was searched in furtherance of an investigation, there appears to have been an independent reason to search the vehicle. The marshals knew that Vernon would be transported to Arizona after he was arrested and that his vehicle could not be left at the casino. Considering this independent basis to search the vehicle, the search falls

within the inventory exception to the warrant requirement and does not violate the Fourth Amendment.

Vernon next argues that the images found on his computer should be suppressed because probable cause did not exist to issue the search warrant. He asserts that the search warrant was based entirely on his pending charges and prior criminal history. Vernon argues that his pending charges and prior convictions do not amount to probable cause for the Government to search his property "forever more." (Def.'s Mot. to Supp. ¶ 6) He maintains that even if the warrant was valid, the search of the computer must be suppressed as fruit of the prior tainted searches and seizures.

The Government counter argues that the computer was searched based on a valid search warrant, and that the warrant affidavit contained probable cause to believe that images of child pornography would be found on the computer. The Government contends that even if the affidavit lacked probable cause, the motion to suppress should still be denied because marshals relied on the warrant in good faith.

A valid search warrant is only issued upon a finding of probable cause. *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007). The information necessary to show probable cause must be contained within the warrant affidavit. *Id.* The Fifth Circuit has noted that an affidavit supporting a warrant to search for child pornography need not contain specific, individualized information that a defendant possesses child pornography. *United States v. Flanders*, 468 F.3d 269, 271 n.3 (5th Cir. 2006). The affidavit, however, must provide the judge with facts and "not mere conclusions, from which he could determine probable cause." *Id.* at 271. An officer's bare hunch that a person has committed a crime does not constitute probable cause. *United States v. Sandoval*, 847 F.2d 179, 185 (5th Cir. 1988). If the hunch is confirmed by later observations, probable cause may exist. *Id.*

9

Evidence is admissible even though the affidavit is insufficient to establish probable cause so long as the evidence was obtained by officers relying on "objectively reasonable good-faith." *United States v. Satterwhile*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). Evidence is not admissible, however, when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

In *United States v. Flanders*, the defendant moved to suppress images of child pornography that were found on his computer and argued that the search warrant was not supported by probable cause. 468 F.3d at 270. The warrant affidavit included a statement from the defendant's wife that he had previously taken a nude, digital picture of his two year old daughter as well as a forensic interviewer's conclusion that the defendant had sexually exploited his daughter. *Id.* at 271. The Fifth Circuit determined that the affidavit contained sufficient information for an officer to reasonably rely on the judge's probable cause determination that the defendant possessed child pornography and stored it on his computer. *Id.* The court reasoned that the affidavit contained facts and not mere conclusions that a crime had been committed. *Id.*

In the present matter, the warrant affidavit contained information regarding (1) the warrantless search of the car, (2) Vernon's pending charges and prior indecent exposure conviction, (3) the use of computers as the main storage device for images of child pornography, and (4) the affiant's conclusion that because Vernon had been convicted of a sex offense and was on lifetime probation, it is likely that he tried to hide child pornography on his computer. The parties have not made clear whether the marshals knew, prior to arresting Vernon, why he was being investigated in Arizona. Arrest warrants typically state why a person is being arrested and this Court presumes that the marshals knew about Vernon's involvement with child pornography prior to arresting him. In

the affidavit, Marshal Kruse states "the use of computers has become nearly the exclusive method of creating, storing and sharing child pornography over the past decade." As noted above, the marshals found a computer and $27,279.00 in cash when they searched Vernon's car under the inventory exception. The marshals pursued an independent investigation of Vernon, knew of the almost exclusive use of computers to transmit child pornography, and found a computer and a large amount of cash in his car. There was probable cause to issue the search warrant.

Based on the above analysis, we find that the defendant's motions **[17, 20]** are DENIED.

SO ORDERED, this the 14th day of September, 2011.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**